UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLORIA D. DICKERSON,<br>        *Plaintiff,*<br><br>v.<br><br><br>BPP PCV OWNERS LLC,<br>        *Defendant.* | Docket No. 21-cv-9003<br><br><br><br><u>**CIVIL ACTION**</u> |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMSS**

**LYDECKER**
Lee Patten, Esq.
Michael Poreda, Esq.
200 Broadhollow Road, Suite 207
Melville, New York 11747
(631) 260-1110
lp@lydecker.com
mporeda@lydecker.com
*Attorneys for Defendant,*
*BPP PCV OWNERS LLC*

**Contents**

Table of Authorities .................................................................................................................. 1
PRELIMINARY STATEMENT .............................................................................................. 3
FACTUAL BACKGROUND .................................................................................................... 3
LEGAL STANDARD ................................................................................................................ 4
LEGAL ARGUMENT ............................................................................................................... 6
   I.   DEFENDANT IS NOT SUBJECT TO CONSTITUTIONAL LIABILITY BECAUSE DEFENDANT IS NOT A STATE ACTOR. .......................................................................... 7
   II.   IN THE ALTERNATIVE, PLAINTIFF HAS FAILED TO PLEAD A POLICY OR CUSTOM OF CONSTITUTIONAL VIOLATIONS. ............................................................. 9
   III.   IN THE ALTERNATIVE, PLAINTIFF HAS NOT PLEAD THE EXISTENCE OF A FOURTH AMENDMENT VIOLATION. ............................................................................. 10
   IV.   PLAINTIFF HAS NOT PLEAD A PRIMA FACIE CASE OF HOUSING DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW. ........... 12
      A.  Plaintiff does not allege that she is a member of a protected group. ............................. 13
      B.  Plaintiff has not plead an adverse action. ....................................................................... 13
      C.  Plaintiff does not even have minimal support for the proposition that the housing provider was motivated by discriminatory intent…………………………………………..... 15
CONCLUSION ......................................................................................................................... 16

## **Table of Authorities**

**Cases**

*Alfano v. Cosetllo*, 294 F.3d 365 Cir. 2002). ................................................................................. 14

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) ................................................................ 8

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 201) .............................................................. 6

*Ashcroft v. Iqbal*, 556 U.S. 622 (2009) ..................................................................................... 5, 6

*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) .................................................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 5,6

*Bishop v. Toys "R" Us-NY LCC*, 414 F. Supp.2d 385 (S.D.N.Y. 2006) ........................................ 8

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ......................................................................................... 8

*Brandon v. City of New York*, 705 F.Supp. 2d 261 (S.D.N.Y. 2010) .......................................... 10

*Brendlin v. California*, 551 U.S. 249 (2007) .............................................................................. 11

*Cancel v. Amakwe*, 551 Fed.Appx. 4 (2d Cir. 2013) ..................................................................... 9

*Ciambriello. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) .................................................. 7, 8

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). ................................................................... 9

*Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234 (S.D.N.Y. 2000) ...................................... 15

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust. Co. of N.Y.*, 375 F.3d 168 (2d Cir.
   2004) ........................................................................................................................................ 6

*Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178 (2d Cir. 2005) .............................................. 7

*Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021) ............................................ 12, 13

*Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F.Supp.3d 635 (E.D. La. 2019).. 14,15

*Guiducci v. Kohl's Dept. Stores*, 320 F.Supp.2d 35 (E.D.N.Y. 2004) .......................................... 8

*Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578 (S.D.N.Y. 2012) ........................................... 12

*Mason v. Am. Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003) .............................................................. 6

*Milton v. Alvarez*, No. 04-cv-8265, 2005 WL 1705523 (S.D.N.Y. July 19, 2005) .................... 8, 9

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ................................................................. 9,10

*Monus v. Riecke*, No. CV 21-218, 2021 WL 1721010 (E.D. Law. Apr. 30, 2021) ...................... 15

*Prowisor v. Bon-Ton*, 426 F.Supp.2d 165 (S.D.N.Y. 2006) .......................................................... 8

*Rashid v. Sufyan***,** No. 116-cv-1094-JSDJS, 2016 WL 7077082 (N.D.N.Y. Dec. 5, 2016)……..7

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008) ................................................................. 10

*Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308 (2d Cir. 2003) ................................................ 7, 8, 9

*Terry v.* Ohio, 392 U.S. 1 (1968) .................................................................................................. 11

*Trombley v. O'Neill*, 929 F. Supp. 2d 81 (N.D.N.Y. 2013) ........................................................... 11

*United States v. Mandenhall,* 446 U.S. 544 (1980) ...................................................................... 11

*United States v. Weaver*, 9 F.4th 129 (2d Cir. 2021) .................................................................... 11

**Statutes**

 42 U.S.C. § 3604(b) ..................................................................................................................... 13

42 U.S.C. § 1983 ............................................................................................................................. 7

New York State Human Rights Law ................................................................................ 3, 6, 12, 14

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................................. 4, 5

Fed. R. Civ. P. 12(b)(6 ................................................................................................................ 4, 5

**Constitutional Provisions**

U.S. CONST. AM. IV. A ............................................................................................................... 11

**PRELIMINARY STATEMENT**

Plaintiff brought this action *pro se* after security guards for the apartment complex where she lives questioned her about the whereabouts of a valuable jewelry box[1] that another resident accidentally left in the refuse room of the complex. She alleges unspecified violations of her rights under the United States Constitution and the New York State Human Rights Law. Because there is no possible way for the facts she alleges to result in liability of the Defendant, which is the owner of the apartment complex, the case must be dismissed.

**FACTUAL BACKGROUND**

Plaintiff Gloria Dickerson is a resident of Peter Cooper Village, an apartment complex in Manhattan. (Poreda Certification at ¶ 11). Specifically, she resides in Unit 8G of 7 Peter Cooper Road. (*Id.* at ¶ 12). The owner of 7 Peter Cooper Road is Defendant BPP PCV Owners LLC. (*Id.* at ¶ 14). Dickerson alleges in the Complaint that she has been a resident of Peter Cooper Village for 30 years. (*Id.* at ¶ 13).

On November 2, 2020, the resident of Unit 13D at 7 Peter Cooper Road reported to Public Safety that she had accidentally left a jewelry box valued at $10,000 in a piece of furniture that she discarded in the basement's refuse area. (Poreda Certification at ¶ 15). PSO Retty reviewed surveillance video. (*Id.* at ¶ 16). The surveillance video shows a woman whose general appearance resembles Plaintiff taking a small dresser that had the jewelry box(es) inside. (*Id.* at 17, **Exhibit I**). The woman in the video resembled the photo on Plaintiff's access card. (*Id.* at 18, **Exhibit E**). PSO David Velez was told to go to Unit 8G, the Plaintiff's residence, to see if anyone there knew about the incident. (*Id.* at ¶ 19).

It is here that the narrative in Plaintiff's Complaint begins:

---

[1] At times, evidence suggests that there were two boxes. It is not clear whether there was one box or two boxes.

> BPP PCV Owners LLC employee (public safety officer) knocked on my apartment door, 7 Peter Cooper Road, 8G, New York, NY 10009. It was morning before noon. The public safety officer said that I was caught on security cameras in the basement of my building removing a cabinet from the trash. He said that one of my neighbors in the building mistakenly left a jewelry box in the cabinet. He indicated that I must return the jewelry box. When I told him I don't know anything about the box[,] [h]e said again that I must return it or they will call the Police. Further, he called Dispatch to confirm, "Dickerson, 7 Peter Cooper, 8G." Dispatch said, "Yes." He again yelled return the jewelry box or we're calling the police. I indicated that they should call the Police. After closing my door, I scurried to get some clothes to meet the Police downstairs in the lobby area. I was terrified given the shootings of George Floyd and Brianna Taylor. I didn't want to see the Police in my apartment alone. It was important for me to remain in the public areas. I didn't want to get shot! I called for a supervisor to come – [Public Safety] [O]fficer Pas[c]ale arrived. Police arrived. I wasn't permitted to see video to confirm it wasn't me. To date I haven't see[n] video. It was determined later that the caregiver for my neighbor, a Jamaican woman, [Icilma Tittle,] had secured the cabinet from the trash.

(Poreda Certification, **Exhibit A**). Dickerson immediately announced her intent to sue. (Poreda Certification, **Exhibits G & H**).

## LEGAL STANDARD

Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's Complaint fails to state a claim upon which relief can be granted with respect to any claims asserted against the within Defendant. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Failing to satisfy Rule 8 is grounds for dismissal for failure to state a claim pursuant to Rule 12(b)(6). As explained more thoroughly below, Plaintiff utterly failed to satisfy Rule 8 with respect to the causes of action addressed herein, and thus, her Complaint should be dismissed.

The United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 622 (2009), detailed the pleading requirements of Rule 8(a)(2). In *Twombly*, the Court explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the ground of his entitlement to relief require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A complaint is insufficient if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…." *Id.* at 678-79.  To determine whether a complaint states a "plausible" claim for relief, a court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  As the Court in *Iqbal* explained:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.  While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  The factual allegations must be sufficient to raise a plaintiff's right

5

to relief above a speculative level. *Twombly*, 555 U.S. at 570; *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). The Court's function is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004).

The Court in *Twombly* and *Iqbal* highlight that merely pleading facts consistent with a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* In fact, it is well-settled law that the presumption of truthfulness does not apply to conclusory allegations or legal conclusions. *See Iqbal*, 556 U.S. at 679; *Mason v. Am. Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003) ("[L]egal conclusion, deductions or opinions couched as factual allegations are not given a presumption of truthfulness."), *cert. denied*, 541 U.S. 1057 (2004). Such conclusory allegations or legal conclusions masquerading as factual conclusions will not defeat a motion to dismiss. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

## LEGAL ARGUMENT

Plaintiff alleges constitutional violations and a violation of the New York State Human Rights Law ("NYSHRL"). Plaintiff's constitutional violations claim must be dismissed because 1.) Defendant is not a state actor; 2.) Plaintiff has not plead a policy or custom of constitutional violations; and 3.) there was no violation of Plaintiff's Fourth Amendment rights. Plaintiff's NYSHRL claim for housing discrimination should be dismissed as well for failure to satisfy any of the three prongs of the *McDonnell Douglas* test. Specifically, she has not plead any of the

following: 1.) membership in a protected group; 2.) an adverse action; or 3.) minimal support for the proposition that the housing provider was motivated by discriminatory intent.

## I. DEFENDANT IS NOT SUBJECT TO CONSTITUTIONAL LIABILITY BECAUSE DEFENDANT IS NOT A STATE ACTOR.

Plaintiff has failed to allege constitutional liability because Defendant is not a state actor. The Constitution itself does not provide a private cause of action. However, plaintiffs may plead causes of action for constitutional violations under 42 U.S.C. § 1983. That statute "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Rashid v. Sufyan*, No. 116-cv-1094-JSDJS, 2016 WL 7077082, at *2 (N.D.N.Y. Dec. 5, 2016).

However, to allege a constitutional violation pursuant to Section 1983 , a plaintiff must assert that a person acting under the color of state law is liable for the deprivation of a right, privilege, or immunity protected by the constitution or a federal statute. 42 U.S.C. § 1983. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005).

A private actor may act under color of state law, but only when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). A complaint must allege facts demonstrating that the private entity and a state actor, "acted in concert to commit an unconstitutional act." *Id.* There must be "such a close nexus" between the private actor and the state that underlying conduct "may be fairly treated as that of the state itself." *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "A merely conclusory allegation that the private entity acted in concert with a state

7

actor does not suffice to state a [Section] 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324. Section 1983's "under-color-of-state-law element . . . excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)); *see also Bishop v. Toys "R" Us-NY LCC*, 414 F. Supp.2d 385, 396 (S.D.N.Y. 2006) (stating "[t]he acts of a store security guard generally do not constitute state action for the purposes of section 1983"). "Instead, there must be a sufficiently higher level of entanglement between the state and the private actor such that the latter can be considered the state itself." *Milton v. Alvarez*, No. 04-cv-8265, 2005 WL 1705523, at *3 (S.D.N.Y. July 19, 2005); *see also Tancredi* , 316 F.3d at 313 ("State action may properly be found where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state or is entwined with government policies.").

Moreover, courts in the Second Circuit have specifically and consistently held that the acts of private security guards do not constitute state action under Section 1983. *See Prowisor v. Bon-Ton*, 426 F.Supp.2d 165, 170 (S.D.N.Y. 2006); s*ee also Guiducci v. Kohl's Dept. Stores*, 320 F.Supp.2d 35, 36-38 (E.D.N.Y. 2004) (collecting cases). In fact, the Second Circuit has noted that a state's licensure or regulation of a private actor's business does not establish a sufficient nexus fairly to attribute the business's actions to the state. *Cancel v. Amakwe*, 551 Fed.Appx. 4, 7 (2d Cir. 2013). Thus, New York State's requirement that security guards be licensed does not transform a private entity or its private employee security guards into state actors or their conduct into state action. *Id.*

Here, the Plaintiff does not allege any State action. She alleges that a private security guard, from a private company, questioned her. Although the police were called, the facts alleged do not demonstrate a high level of "entanglement" sufficient to hold that the Defendant was acting under color of state law. *See Milton v. Alvarez*, No. 04-cv-8265, 2005 WL 1705523, at *3 (S.D.N.Y. July 19, 2005). The police did not exercise coercive power, entwine themselves in the management of, or provide significant encouragement to Defendant's public safety officers. *Tancredi*, 316 F.3d at 313. In fact, Plaintiff doesn't even allege that the police did anything wrong at all, which cuts off any possibility of a "close nexus" between the private actor and the State. *Tancredi*, 316 F.3d at 312. Therefore, there can be no constitutional liability here, and the constitutional claims must be dismissed.

## II.   IN THE ALTERNATIVE, PLAINTIFF HAS FAILED TO PLEAD A POLICY OR CUSTOM OF CONSTITUTIONAL VIOLATIONS.

Assuming for the sake of argument that the Defendant was a state actor, the Plaintiff still could not hold the Defendant liable for a constitutional violation for failure to plead the existence of a policy or custom of constitutional violations.

It is well established that entities subject to Section 1983 cannot be liable under the statute for acts of their employees on a *respondeat superior* theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather a plaintiff pursuing a Section 1983 claim against an entity must show that the execution of a policy or custom inflicted the alleged injury. *Monell*, 436 U.S. at 694. An entity can only be held liable under Section 1983 where the entity itself causes the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). In order to prevail on a claim against an entity under Section 1983 based on acts of a state actor, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3)

causation; (4) damages; and (5) that an official policy of the entity caused the constitutional injury. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91).

There are four ways to establish the existence of an official policy or custom: (1) a formal policy officially endorsed by the state actor entity; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, it constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Brandon v. City of New York*, 705 F.Supp. 2d 261, 276-77 (S.D.N.Y. 2010). Plaintiff must also prove a causal link between the policy or custom and the alleged injury in order to find liability against a state actor entity. *Id.* at 277.

Plaintiff Dickerson has plead nothing in the way of a policy or custom of constitutional violations. The best that can be said about the allegations in the Complaint is that employees made a one-time inquiry at her home based upon a reasonable belief, whose reasonableness was confirmed by the police, that she might be able to reunite the missing jewelry box with its owner. The Court must therefore dismiss any claims for constitutional violations.

### III.     IN THE ALTERNATIVE, PLAINTIFF HAS NOT PLEAD THE EXISTENCE OF A FOURTH AMENDMENT VIOLATION.

Alternatively, the Complaint must be dismissed because the acts of which the Plaintiff complains do not substantively amount to the Fourth Amendment violations she seems to think they do. The Fourth Amendment protects the people from "unreasonable searches and seizures"

and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons or things to be seized." *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 94 (N.D.N.Y. 2013) (quoting U.S. CONST. AM. IV. A).

In this case, the facts Plaintiff alleges most closely resemble a seizure, though they do not reach the definitional threshold of a Fourth Amendment seizure. In the landmark case of *Terry v. Ohio*, the Supreme Court stated that a seizure occurs when a police officer restrains a person's freedom to walk away. 392 U.S. 1, 16 (1968); *see also Brendlin v. California*, 551 U.S. 249, 254 (2007) ("A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement."). A further test for the threshold of seizure was articulated in the 1980 U.S. Supreme Court case, *United States v. Mandenhall*. *Brendlin*, 551 U.S. at 255. In *Mandenhall*, it was announced that a "seizure" occurs where, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also United States v. Weaver*, 9 F.4th 129, 142 (2d Cir. 2021) ("To be sure, under Fourth Amendment seizure law, "a person has been 'seized' ... if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").

On the facts plead, there is no basis to conclude that Plaintiff felt she was unfree to leave. By Plaintiff's own admission, she closed the door in the face of security officer Velez. Therefore, she obviously knew she was free to leave the encounter. Moreover, she decided on her own to meet the police in the lobby. No one coerced her to do this. No one forced her to

stay there. At no point does the Plaintiff allege that she was not free to leave. Therefore, there is no allegation of a substantive Fourth Amendment violation.

IV. **PLAINTIFF HAS NOT PLEAD A PRIMA FACIE CASE OF HOUSING DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW.**

The New York State Human Rights Law ("NYSHRL") outlaws discriminatory practices in housing. N.Y. Exec. Law § 296. Specifically, the NYSHRL makes it unlawful to discriminate against any person "because of his or her race, creed, color, disability, national origin, sexual orientation, gender identity or expression, military status, age, sex, marital status, lawful source of income or familial status in the terms, conditions or privileges of any publicly-assisted housing accommodations or in the furnishing of facilities or services in connection therewith." *Id.*

New York State Human Rights Law housing discrimination claims are analyzed under the same standard as claims made under the Fair Housing Act. *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y. 2012). *See also Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) ("Stating a housing discrimination claim under New York State law is substantially similar to stating a housing discrimination claim under the FHA."). When a plaintiff brings a housing discrimination claim that does not rest on direct evidence of landlord discrimination, the court analyzes the claim under the familiar *McDonnell Douglas* burden-shifting framework first developed in Title VII cases. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) ). "Plaintiffs have specific, 'reduced' pleading burdens in cases subject to the *McDonnell Douglas* analysis. *Ibid.* For a plaintiff's claim to survive a motion to dismiss in a *McDonnell Douglas* case, she must plausibly allege that she (1) is a member of

12

a protected class; (2) suffered an adverse action; and (3) has at least minimal support for the proposition that the housing provider was motivated by discriminatory intent. *Ibid.*

### A. Plaintiff does not allege that she is a member of a protected group.

The pleadings fail to allege that Plaintiff is a member of a protected group. The Complaint therefore fails to meet the *McDonell Douglas* standard on those grounds. But assuming the Plaintiff would correct this defect, the case would still be dismissed with prejudice for failure to allege an adverse action or minimal support for the existence of discriminatory intent.

### B. Plaintiff has not plead an adverse action.

The Complaint also fails the *McDonnell Douglas* test on the grounds that there is no adverse action, or more specifically, in this case, no hostile housing environment.

The Second Circuit has noted that housing discrimination cases typically involve the sale or rental of premises; however discriminatory conduct that takes place after the tenant moves in may also be actionable. *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019). The basis for housing discrimination that occurs while a tenant is living in a housing unit is 42 U.S.C. § 3604(b). *Id.* Here, the FHA, makes it unlawful to discriminate against any person in "the terms, conditions, or privileges of sale or rental of a dwelling." 42 U.S.C. § 3604(b). The words "terms, conditions, and privileges" are read broadly to include claims regarding services or facilities after the owner or tenant has acquired possession of the dwelling. *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 376 (2d Cir. 2019). Courts, including the Second Circuit, have construed such claims for discrimination in the "terms, conditions, or privileges" of sale or rental of a dwelling as "hostile housing environment" claims. *Id.* at 376-77; *see also G.B. v. DiPace*, No. 114-cv-0500-DNH-CFH, 2019 WL 1385840, at *3 (N.D.N.Y. Mar. 27, 2019) ("Courts in

13

the Second Circuit have recognized a cause of action pursuant to Section 296 [of the New York State Human Rights Law] where a hostile housing environment exists . . . The Standards relevant to a claim of discrimination under NYSHRL "parallel those applicable under the FHA,") (internal citations omitted).

A hostile housing environment claim requires a plaintiff to show that: (1) she endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of her residency, or in the provision of services or facilities;[2] and (3) that there is a basis for imputing liability to the defendant. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861–62 (7th Cir. 2018) (internal citations omitted).

Here, Plaintiff cannot show that the hostility was severe or pervasive enough to interfere with the terms, conditions, or privileges of her residency.  The existence of "severe or pervasive" housing harassment is determined by consideration of "the totality of the circumstances, frequency of the discriminatory conduct, its severity, and whether it is physically threatening or humiliating rather than merely offensive." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 862 (7th Cir. 2018).

When the hostile environment is based on a single incident, that incident must be "extraordinarily severe." *Alfano v. Cosetllo*, 294 F.3d 365, 374 92d Cir. 2002).  Allegations of "isolated or trivial" harassment are not sufficient to state a claim. *Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F.Supp.3d 635, 652 (E.D. La. 2019).  By way of example, a hostile housing environment based on a single incident can occur when a member of the housing

---

[2] In 2019, the New York Legislature amended the NYSHRL to eliminate the "severe or pervasive" requirement as to employers, licensing agencies, employment agencies, and labor organizations.  The legislature explicitly did **not** extend this liberalization of the standard of proof to housing discrimination.  *Compare* NY EXEC. LAW § 296(1) *with* NY EXEC. LAW § 296(2).

staff touches the intimate parts of a resident without consent. *Monus v. Riecke*, No. CV 21-218, 2021 WL 1721010, at *3 (E.D. Law. Apr. 30, 2021). On the other hand, two isolated uses of a racial slur do not constitute a hostile environment. *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 251 (S.D.N.Y. 2000). This case does not reach the level of either of these examples. Plaintiff alleges only a single incident that was not explicitly racial in its motivation. The incident was part of a justified effort to locate lost property. The plaintiff was never accused of criminal activity, and the reason she was questioned had as much to do with her age, stature, and the floor that she lived on as it had to do with her race. The single incident in no way meets the "extraordinary" threshold necessary to create a hostile environment based on a single incident. In no way do the allegations of the Complaint suggests that the alleged harassment was severe or pervasive enough to interfere with the "terms, conditions, or privileges" of her residency. The allegation is "isolated and trivial," consisting of a single good faith effort to do a service for another resident. *Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F.Supp.3d 635, 652 (E.D. La. 2019) ). The incident was not severe, and was at best, a minor inconvenience or insult.

### C. Plaintiff does not even have minimal support for the proposition that the housing provider was motivated by discriminatory intent.

Finally, Plaintiff's NYHRL housing discrimination fails the *McDonnell Douglas* test because the Complaint does not allege even minimal support for the proposition that the housing provider was motivated by discriminatory intent. Plaintiff concedes that the point of Defendant's questioning was to locate misplaced property. There is no allegation that the police were called to harass her based on her race. The police finding that Plaintiff did look like the woman in the surveillance video confirms the reasonableness of the Defendant's decision to question her. Moreover, the Plaintiff's suggestion that police question Icilma Tittle suggests that Plaintiff was aware that Defendant's suspicion that she had taken the box had largely to do with her residency

15

on the 8th floor and her similar appearance to Icilma Tittle.  None of this bespeaks a racially discriminatory motive.  Moreover, the Complaint styles this event as a one-time incident.  There is no allegation of a generalized or heightened suspicion of residents based on protected class at Peter Cooper Village.  There is thus no substantive allegation of discriminatory intent.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss should be granted, and the Plaintiff's Complaint dismissed with prejudice.

Respectfully Submitted,<br>
**LYDECKER**<br>
*Attorneys for Defendant*

*/s/ Lee Patten*<br>
By: _____<br>
**LEE PATTEN, ESQ.**