UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLORIA D. DICKERSON,

                              Plaintiff,

            v.

BPP PCV OWNERS LLC,

                              Defendant.

No. 21-CV-9003 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

On November 2, 2020, Plaintiff Gloria Dickerson—a Black woman—was questioned by a security guard in her building about whether she had taken a cabinet that another resident discarded in the building's refuse room. That resident had mistakenly left a valuable jewelry box inside the cabinet. Having viewed the available surveillance footage, the security guard was wrongly convinced that Plaintiff was the individual who removed the cabinet from the trash. Despite Plaintiff's insistence that she knew nothing about the matter, the guard demanded that she return the jewelry box, and called the police when she did not. Plaintiff was never arrested, although she was understandably humiliated by the experience. It was later determined that Plaintiff's neighbor's caregiver was the one who took the cabinet and the jewelry box along with it.

Plaintiff, proceeding *pro se*, filed this lawsuit against the owner of her apartment complex. She alleges that she was the victim of racial profiling, and brings claims under the Fourth and Fourteenth Amendments, the Civil Rights Act of 1968, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Americans with Disabilities Act ("ADA"). Now before the Court is Defendant's motion to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion is granted.

## BACKGROUND

The following facts are drawn from Plaintiff's complaint and are assumed to be true for the purposes of this motion.  *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court also considers the factual allegations contained in Plaintiff's opposition brief as supplementing her complaint.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

Plaintiff is a longtime resident of the Peter Cooper Village in Manhattan.  Opp. at 1.  She alleges that in the 30 years she has lived there, she and her former husband have been "the only African American residents [at] 7 Peter Cooper Road."  Opp. at 2.  On the morning of November 2, 2020, an unnamed security guard knocked on her door, looking to recover a jewelry box that another resident had mistakenly left inside a cabinet that was discarded in the trash room.  Opp. at 1.  The security guard had watched the available surveillance footage and told Plaintiff that it captured her taking the cabinet.  *Id.*  After Plaintiff insisted that she did not know anything about the cabinet or the jewelry box, the guard "screamed" at her and demanded that she return the lost property.  *Id.*  He also threatened, several times, to call the NYPD if she did not comply.  *Id.* Plaintiff indicated that he should call the police and then shut her door.  Compl. at 6.

Two police officers were called to the scene, and Plaintiff met them in the lobby when they arrived.  *Id.*; Opp. at 3.  They were shown the surveillance footage that purportedly depicted an individual removing the cabinet from the building's trash room.  *Id.* at 5.  Plaintiff, however, was not permitted to view the footage.  *Id.*  Ultimately, it was determined that the caregiver of Plaintiff's next-door neighbor, a Jamaican woman, was the person who had taken the cabinet from the trash room.  Compl. at 6.

2

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Ofori–Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). Courts, however, "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In ruling on a motion to dismiss, courts may consider only "the facts as asserted within the four corners of the complaint" together with "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).[2]

"Where, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." *Walker*, 717 F.3d at 124. The Court may also consider and similarly construe allegations contained in a *pro se* plaintiff's opposition papers. *See Nielsen v.*

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

[2] As a result, the Court does not consider the emails, statements from security personnel, photographs, and surveillance video submitted by Defendant in support of its motion to dismiss. These materials go beyond the "four corners" of the complaint, and Plaintiff has not relied on them for their "terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

*Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).  Nonetheless, a *pro se* complaint must state a plausible claim for relief.  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## DISCUSSION

### I.      Constitutional Claims

Plaintiff's submissions indicate that she seeks to bring claims against Defendant under 42 U.S.C. § 1983 ("Section 1983") for violating her constitutional rights, including under the Fourth and Fourteenth Amendments.  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. and Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005).  "The purpose of the state action requirement is, at bottom, to preserve an area of individual freedom by limiting the reach of federal law and avoid imposing responsibility on a State for conduct it could not control while, at the same time, ensuring that constitutional standards are available when it may be fairly said that the State is indeed responsible for the conduct of which the plaintiff complains." *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) (internal quotations omitted).  "A plaintiff pressing a claim of violation of [her] constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).

"For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself." *Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 111 (2d Cir. 2003) (internal quotations omitted).  A private company's acts only constitute state action "when the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert,

or when the private actor operates as a willful participant in joint activity with the state or its agents, is controlled by an agency of the state, has been delegated a public function by the state, or is entwined with governmental policies." *Id.* at 112.  By contrast, "conduct by a private entity is not fairly attributable to the state merely because the private entity is a business subject to extensive state regulation or 'affected with the public interest.'" *Id.* (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 353 (1974)).

Plaintiff has failed to establish that Defendant's conduct was fairly attributable to the state, as she must when asserting a Section 1983 claim. *See Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  Here, the basis for Plaintiff's constitutional claims is her allegedly discriminatory treatment at the hands of an individual who was employed by Defendant, a private business entity.  She refers to the security guard who knocked on her door as a "BPP PCV Owners LLC Public Safety Officer," Opp. at 1, and has pled no facts suggesting that the individual was affiliated with law enforcement in any way.  None of the factual allegations in Plaintiff's complaint, even construed generously, suffice to show state action under any of the abovementioned tests.  The fact that Defendant's security guard called the police to investigate the situation does not change the Court's analysis, as the mere fact that a private actor received police assistance is not sufficient to transform that private actor's conduct into state action for § 1983 purposes. *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (explaining that a legitimate request for assistance does not render a private actor "jointly engaged" in law enforcement conduct).  And Plaintiff has not alleged that the police officers discriminated against her or harassed her on November 2, 2020—just that Defendant did.

Accordingly, because Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful," *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999), Plaintiff cannot sustain a claim against Defendant for violating her constitutional rights.

## II.    Housing Discrimination

Plaintiff next asserts that she experienced housing discrimination—principally on the basis of race, although she also mentions age, sex, and disability, Opp. at 8—in violation of the Civil Rights Act of 1968 (otherwise known as the Fair Housing Act, or "FHA"),[3] the NYSHRL and the NYCHRL.  "NYSHRL[] and NYCHRL housing discrimination claims are analyzed under the same standard as claims made under the FHA." *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y. 2012); *see also See Fair Hous. Justice Ctr., Inc. v. Broadway Crescent Realty, Inc.*, No. 10 Civ. 34, 2011 WL 856095, at *9 (S.D.N.Y. Mar. 9, 2011) (same); *Skorupska v. 525 W. 52 Prop. Owner LLC*, No. 20 Civ. 2831 (KPF), 2022 WL 3997781, at *10 (S.D.N.Y. Sept. 1, 2022) (same); *De La Fuente v. Sherry Netherland, Inc.*, No. 17 Civ. 4759 (PAE), 2019 WL 3430207, at *11 (S.D.N.Y. July 30, 2019) (applying the same legal standards to housing discrimination claims under the FHA, NYSHRL, and NYCHRL), *aff'd*, 845 F. App'x 29 (2d Cir. 2021) (summary order). As such, the Court analyzes all of Plaintiff's housing discrimination claims together.

The FHA, a landmark civil rights statute, makes it unlawful for a public or private landlord to intentionally "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 70-71 (2d Cir. 2021); 42 U.S.C. § 3604(b).[4]

---

[3] Although it is unclear from Plaintiff's complaint which Civil Rights Act she intended to invoke, the Court construes her complaint to allege an FHA violation.

[4] As Judge Marrero noted in *Haber*, "[t]he NYSHRL and NYCHRL contain language that is substantively identical to that of §§ 3604(a), 3604(b), and 3617 of the FHA, differing in that the NYSHRL and NYCHRL cover a

Furthermore, Section 3617 of the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by" 42 U.S.C. § 3604.  *Id.* at § 3617.[5]  Collectively, these provisions are designed "to eliminate all traces of discrimination within the housing field." *Cabrera v. Jakabovitz*, 24 F.3d 372, 390 (2d Cir. 1994).

"When, as here, a plaintiff brings a claim under the FHA that does not rest on direct evidence of landlord discrimination, [courts] analyze the claim under the familiar *McDonnell Douglas* burden-shifting framework first developed in Title VII cases." *Francis*, 992 F.3d at 73. Plaintiffs have specific, "reduced" pleading burdens in cases subject to the *McDonnell Douglas* analysis.  *Id.*  For a plaintiff's claim to survive a motion to dismiss in a *McDonnell Douglas* case, she must plausibly allege that she: (1) is a member of a protected class, (2) suffered an adverse action, and (3) has at least minimal support for the proposition that the housing provider was motivated by discriminatory intent.  *Id.*; *see also Littlejohn v. City of N.Y.,* 795 F.3d 297, 311 (2d Cir. 2015) ("[W]hat must be plausibly supported by facts alleged in the complaint is . . . at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent.").

Although Plaintiff has alleged that, as a Black woman, she is a member of a protected class, her complaint lacks even minimal factual support to raise an inference of discriminatory intent. She pleads no facts to suggest that Defendant's treatment of her on November 2, 2020—even if

_____

broader range of protected classes," including—as relevant here—age and disability.  847 F. Supp. 2d at 588 n.5 (citing N.Y. Exec. Law § 296(2–a), (5)(a); N.Y.C. Admin. Code § 8–107(5)(a)).

[5] The law in this circuit concerning "to what extent the FHA's prohibition of discrimination reaches conduct engaged in after a tenant acquires the dwelling"—commonly referred to as "post-acquisition conduct"—is not completely settled.  *See Francis*, 992 F.3d at 80 n.50.  For present purposes, the Court assumes that the FHA proscribes harassment against a resident after she has rented or bought the dwelling in question.  *See Pierre v. Lantern Grp. Found., Inc.*, No. 14 Civ. 8449 (JMF), 2016 WL 3461309, at *2 (S.D.N.Y. June 20, 2016).

that conduct was objectively aggressive or disrespectful—was motivated by racial hostility. *See Stone v. 23rd Chelsea Assocs.*, No. 18 Civ. 3869 (VSB), 2020 WL 1503671, at *8 (S.D.N.Y. Mar. 30, 2020) ("These vague allegations at best suggest that Defendants harbored an antipathy towards Plaintiff, but fall far short of raising an inference that they acted with 'discriminatory animus' based on his membership in a protected class."). Plaintiff does not allege, for example, that Defendant made any "invidious comments" about members of her protected group, *Littlejohn*, 795 F.3d at 312, either during or outside of the confrontation at the center of this action.[6] Rather, her allegations linking Defendant's conduct with her race are entirely conclusory. *See* Opp. at 5 ("Defendant targeted the Plaintiff for no other reason than her race."); *id.* at 8 ("Plaintiff alleges that Defendant treated her like a CRIMINAL because she is African American."). These assertions, without more, cannot give rise to a reasonable inference of discriminatory animus. *See, e.g.*, *Haber*, 847 F. Supp. 2d at 586-88 (finding a plaintiff's "own conclusory assertions that [the defendants] acted for racially motivated reasons" insufficient to establish an inference of discrimination, especially where nothing in the record suggested that the plaintiff "was being treated differently from tenants of any other race").

---

[6] Plaintiff does assert that new residents of Peter Cooper Village have asked her "[w]ho she works for" in the building, and unidentified security guards have similarly mistaken her for a "housemaid" in the past. Opp. at 4. While it is shameful that Plaintiff has had to endure such indignities, these allegations do not suffice to give rise to a reasonable inference of discrimination in this instance. Comments made by other residents of the building cannot be fairly attributed to Defendant when there is no factual support for the idea that Defendant controlled such residents' conduct. *See Francis*, 992 F.3d at 75 n. 28 (assuming, without deciding, that "deliberate indifference may be used to ground an FHA claim when a plaintiff plausibly alleges that a defendant had the requisite control over both the alleged harasser and the context in which the harassment occurs"). And Plaintiff's allegation that an unknown number of biased comments were made by unnamed security guards at unspecified times is simply too vague and "unconnected to the adverse . . . action underlying the claim," at least as currently pled, to support an inference of discriminatory animus. *Ahmad v. White Plains City Sch. Dist.*, No. 18 Civ. 3416 (KMK), 2019 WL 3202747, at *5 (S.D.N.Y. July 16, 2019); *see also Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009) ("[T]he more remote and oblique the remarks are in relation to the . . . adverse action, the less they prove that the action was motivated by discrimination."); *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("'[S]tray remarks' alone do not support a discrimination suit.").

Plaintiff claims that Defendant would not have called the police if she were white. Opp. at 8 ("Plaintiff further alleges that her white, female counterpart would not have been mistreated . . . Plaintiff alleges that Defendant would not have called the New York City Police Department on her white counterpart . . . Plaintiff alleges that Defendant would have handled the situation with more professionalism ha[d] she been her white counterpart."). But she does not provide any factual support for that assertion. Notably, she does not identify any similarly situated comparators outside of her protected class who were treated more favorably than she was under comparable circumstances. *See Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (finding dismissal appropriate where "bald assertions of discrimination and retaliation" were unsupported by examples of similarly-situated individuals being treated differently); *Wiltz v. New York Univ.*, No. 19 Civ. 03406 (GHW) (SDA), 2019 WL 8437456, at *11 (S.D.N.Y. Dec. 23, 2019), *report and recommendation adopted*, No. 19 Civ. 03406 (GHW), 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020) (finding dismissal warranted where the plaintiff "provide[d] no factual allegations supporting his claim that NYU imposed different standards for other residents, nor . . . identified any white or non-disabled tenant who received a lease renewal under similar circumstances").

Moreover, a complaint that sets forth "other possible motives" for the alleged conduct, "combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination." *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999). Here, Plaintiff acknowledges that the security guard identified (or misidentified) her as the individual who had possession of the jewelry box only after viewing surveillance video that, presumably, depicted a Black woman removing the cabinet from the refuse room. Plaintiff also contends that she is the only Black woman who lives in her building, and has been for the last 30 years. Opp. at 5 ("An African American woman was shown on the security cameras and because Plaintiff is the ONLY

African American resident for 30 years, she was singled out a[s] the person in the video footage."). Her complaint thus identifies a non-discriminatory reason for the conduct at issue: that she was the only resident in her building who matched the physical appearance of the individual captured by the security cameras.  Plaintiff may well be correct—in a technical sense—that "Defendant targeted [her] for . . . her race."  *Id.*  Race is certainly a component of one's physical appearance, and a significant one at that.  But when race plays a purely descriptive role—particularly when it is considered in conjunction with other identifying physical characteristics such as gender, age, body type, and so forth—and there are no other facts tending to suggest that racial *animus* was at play, Plaintiff cannot make out a claim for race discrimination on this basis alone.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (noting that "[r]ace and gender" may be referenced "in [a] benign sense . . . [as] these are human characteristics of which decisionmakers are aware and about which they may comment in a perfectly neutral and nondiscriminatory fashion"); *Floyd v. City of New York*, 959 F. Supp. 2d 540, 563 n. 29 (S.D.N.Y. 2013) (noting that, in the policing context, "race is a permissible consideration where there is a specific suspect description that includes race") (citing *Brown v. City of Oneonta, New York*, 221 F.3d 329, 340 (2d Cir. 2000)); *Brady v. Cheltenham Twp.*, No. 97 Civ. 4655, 1998 WL 164994, at *6 (E.D. Pa. Apr. 9, 1998) ("A mere descriptive phrase in which a police officer observes an individual's race in context with other identifying characteristics is not evidence from which racial animus may be inferred.").

The Court does not doubt that Defendant's treatment of Plaintiff on November 2, 2020— as described in her complaint—was both insensitive and upsetting.  Nevertheless, Plaintiff has

failed to connect that conduct to hostility on the basis of race.[7]  Her allegations with respect to sex, age, and disability are even more deficient—indeed, they are virtually non-existent.  The Court thus finds that Plaintiff has failed to state a claim that she was discriminated against on account of her race, sex, age, or disability.[8]

### III.    Retaliation

Next, Plaintiff claims that Defendant mistreated her in retaliation for past complaints she has made to "Public Safety Chief Matthews over the years about the aggressive, discriminatory behavior of the Public Safety Officers."  Opp. at 2.  To prevail on a claim of retaliation under the FHA, a plaintiff must establish: (1) that she engaged in protected activity by opposing conduct prohibited under the FHA; (2) that the defendant was aware of the protected activity; (3) that the defendant subsequently took adverse action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse action.  *Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005), *aff'd*, 212 F. App'x 38 (2d Cir. 2007).  The term "protected activity" refers to "action taken to protest or oppose statutorily prohibited discrimination."  *Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II*, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006).

---

[7] Because the Court concludes that Plaintiff has failed to plausibly allege that Defendant's treatment of her on November 2, 2020 was motivated by discriminatory intent, it need not address whether that conduct amounted to an "adverse action" within the meaning of *McDonnell Douglas*.  *See Francis*, 992 F.3d at 73 n.21.

[8] The Court recognizes that it must "analyze NYCHRL claims separately and independently from any federal and state law claims" and that NYCHRL claims are to be reviewed more liberally than their federal or state counterparts.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Nevertheless, even under the NYCHRL's lower standard, a plaintiff must still show that the conduct complained of was motivated "at least in part" by a protected characteristic.  *See De La Fuente v. Sherry Netherland, Inc.*, 845 F. App'x 29, 33 (2d Cir. 2021) (summary order).  Because Plaintiff has failed to make that minimal showing here, the Court does not separately evaluate her NYCHRL claim.

Here, Plaintiff's complaint is devoid of allegations establishing any kind of causal relationship between her prior complaints of discriminatory treatment and the conduct at issue in this action.  She does not specify when her prior complaints were made, thus making it impossible for the Court to draw any kind of causal inference in her favor on the basis of temporal proximity. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.") (internal quotations omitted).  She has also not alleged that any of her neighbors who had not complained of discriminatory conduct were treated more favorably than her in an analogous situation.  *See Jackson*, 450 F. App'x at 19 ("Jackson's bald assertions of . . . retaliation, unsupported by any comments, actions, or examples of similarly-situated individuals outside of Jackson's protected class being treated differently, from which we could infer that the defendants possessed a . . . retaliatory motive, are implausible and insufficient to survive a motion to dismiss.").  Put simply, Plaintiff's complaint fails "to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Her retaliation claim is thus dismissed as well.

## IV.    ADA

Lastly, Plaintiff asserts that Defendant discriminated against her in violation of the ADA. The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).  "A plaintiff may establish a violation of Titles II and III by proving: (1) that she is a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that she was denied the opportunity to participate in or

benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *Lopez v. City of New York*, No. 17 Civ. 3014 (VEC) (AJP), 2017 WL 4342203, at *10 (S.D.N.Y. Sept. 28, 2017) (citing *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004)).

Plaintiff cannot pursue an ADA claim against Defendant because she has not alleged that it is a public entity, nor that it provides a public accommodation within the meaning of the ADA. *See Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 07913 (LBS), 2012 WL 3288240, at *7 (S.D.N.Y. Aug. 6, 2012) ("The term 'public accommodation' as used in the ADA . . . does not include residential facilities or apartment buildings."); *Kitchen v. Phipps Houses Grp. of Cos.*, No. 08 Civ. 4296 (DC), 2009 WL 290470, at *2 n.3 (S.D.N.Y. Feb. 5, 2009), *aff'd,* 380 F. App'x 99 (2d Cir. 2010) ("[A] residential facility, such as an apartment, is not a public accommodation under the ADA."); *Rappo v. 94-11 59th Ave. Corp.,* No. 11 Civ. 4371, 2011 WL 5873025, at *2 (E.D.N.Y. Nov. 21, 2011) ("[The ADA] does not apply to private residential complexes, even if the premises are used for publicly subsidized housing."). Therefore, Plaintiff's ADA claim must be dismissed.

### V.    Leave to Amend

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotations and citation omitted). In this circuit, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Because it is conceivable that Plaintiff could amend her complaint to correct some of the deficiencies identified herein—for example, by

alleging facts to raise an inference of discriminatory intent—she is granted leave to amend, should she have a good faith basis to do so.

## CONCLUSION

The Court is certainly sympathetic to the pain Plaintiff suffered as a result of this unfortunate incident.  Nonetheless, as pled, Plaintiff's allegations—even interpreted generously—do not suffice to overcome Defendant's motion to dismiss.  Accordingly, that motion is granted. If Plaintiff intends to file an amended complaint, she must do so within 30 days of the date of this order.

The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 9 and 10 and to mail a copy of this order to Ms. Dickerson.

SO ORDERED.

Dated:      September 28, 2022
            New York, New York

_____
Ronnie Abrams
United States District Judge