UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

GLORIA D. DICKERSON,

                Plaintiff,

-against-                                                                 21-CV-9003-LTS

BPP PCV OWNERS LLC,

                Defendant.

---------------------------------------------------------

## MEMORANDUM ORDER

Plaintiff Gloria Dickerson ("Plaintiff" or "Dickerson") brings this pro se action against Defendant BPP PCV Owners LLC ("Defendant"), asserting claims for racial discrimination under the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. ("FHA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (Docket entry no. 46 (the "Amended Complaint" or "AC").) The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C sections 1331 and 1367.

The Defendant has moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. (Docket entry no. 47 (the "Motion").) The Court has considered the parties' submissions carefully and, for the following reasons, grants Defendant's motion to dismiss the Amended Complaint in its entirety. The Court grants Plaintiff one final opportunity to amend her Complaint to replead her housing discrimination claims.

## BACKGROUND

Unless otherwise noted, the following summary is drawn from the Amended Complaint, from which all well-pleaded allegations are presumed true for the purposes of this motion practice.

Plaintiff is a 74-year-old African American woman and a 30-year resident of 7 Peter Cooper Road, which is owned by the Defendant. (AC at 2.) On November 2, 2020, a Public Safety Officer, an employee of the Defendant, knocked on Plaintiff's apartment door and accused her of removing a cabinet containing a neighbor's valuable jewelry from the building's trash. (Id. at 4.) When Plaintiff denied taking the property, the Public Safety Officer said that "security cameras show Plaintiff removing the cabinet."[1] (Id.) The confrontation became heated and the Officer "screamed with bulging eyes that Plaintiff must return the jewelry box, or they will call NYPD." (Id.) Plaintiff closed her door and took medication "because her breathing was distressed, and her heart was beating rapidly." (Id. at 5.) Plaintiff then went to the lobby to meet with the NYPD because she was afraid of potential violence if the police confronted her alone in her apartment. (Id.) The police officers spoke to Plaintiff in the lobby, reportedly without any further incidents. (Id.) Shortly thereafter, Plaintiff learned that another neighbor's assistant, a Jamaican woman, had taken the cabinet, and Plaintiff promptly informed the NYPD of that fact. (Id.)

Plaintiff alleges that the Public Safety Officer's behavior caused her distress, and that the false accusation was "part of [Defendant's] Master Plan to exclude African Americans" from residing in the building. (Id. at 8-9.) Plaintiff alleges the building has a longstanding history of refusing to rent to African Americans. (Id. at 6-7.) She also alleges that she has been the victim of racial profiling and related mistreatment around the building on numerous occasions, and that her discriminatory treatment was perpetrated by other residents and, on one

---

[1] Plaintiff writes using irregular capitalization. For readability, the Court uses standard capitalization when quoting from the complaint. All other grammar, spelling, and punctuation are as in the original unless otherwise indicated.

specific occasion, by one of the Defendant's Public Safety Officers.  (Id.)  Plaintiff alleges that her peaceful use and enjoyment of her home has been "forever damaged."  (Id. at 9.)

## DISCUSSION

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that contains only "naked assertions" or a "formulaic recitation of the elements of the cause of action" cannot suffice. Twombly, 550 U.S. at 555.  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)).

Plaintiff appears pro se, and thus the Court is obliged to construe her pleadings liberally, Harris, 572 F.3d at 72, and interpret them to raise the "strongest [claims] that they *suggest*." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations marks and citations omitted) (emphasis in original).  But the "special solicitude" in pro se cases, id. at 475 (citation omitted), has its limits — to state a claim, pro se pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Housing Discrimination under the Fair Housing Act

The Court construes the allegations in Plaintiff's Amended Complaint as asserting a hostile housing environment claim under the FHA. The FHA prohibits discrimination in the "terms, conditions, or privileges" of rental of a dwelling. 42 U.S.C. § 3604(b); see also 42 U.S.C.A. § 3617 (Westlaw through P.L. 118-41) ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by [§ 3604.]"). The Second Circuit has held that the FHA protects residents against post-acquisition conduct that "would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling." Francis v. Kings Parks Manor, Inc., 944 F.3d 370, 377 (2d Cir. 2019), vacated in part on other grounds, 992 F.3d 67 (2d Cir. 2021). To prevail on such a claim, a plaintiff must plead adequate facts to establish "(1) that she was subjected to harassment sufficiently pervasive and severe so as to create a hostile housing environment, (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the landlord." A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo., No. 19-2771-CV, 2021 WL 5121137, at *1 (2d Cir. Nov. 4, 2021) (summary order) (quoting Pierre v. Lantern Grp. Found., Inc., No. 14-CV-8449 (JMF), 2016 WL 3461309, at *2 (S.D.N.Y. June 20, 2016)).

As an African American woman, Plaintiff has established that she is a member of a protected class due to her race. However, Plaintiff has failed to plead facts sufficient to establish either that she suffered "sufficiently pervasive or severe" harassment, within the meaning of the statute, or that the harassment that she did experience was "motivated by discriminatory intent." A.L.M. ex rel. Moore, 2021 WL 5121137, at *2.

*Severity of the Harassment*

To sustain a hostile housing environment claim, a tenant's discriminatory harassment must have been "severe or pervasive enough to interfere with the terms, conditions or privileges" of his or her residency.  Wetzel v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 862 (7th Cir. 2018).  In other words, the offensive conduct must "unreasonably interfere[] with [plaintiff's] use and enjoyment of the premises."  Mohamed v. McLaurin, 390 F. Supp. 3d 520, 548 (D. Vt. 2019).  The Court determines the significance of the harassment by considering "the totality of the circumstance, including the frequency of the discriminatory conduct, its severity, and whether it is physically threatening or humiliating rather than merely offensive."  Wetzel, 901 F.3d at 862; see also A.L.M. ex rel. Moore, 2021 WL 5121137, at *1 ("The '[f]actors to be considered . . . include . . . the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved.'" (quoting 24 C.F.R. § 100.600(a)(2)(i)(A)).  A plaintiff must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her living environment."  Ghaly v. U.S. Dep't of Agric., 739 F. Supp. 2d 185, 196 (E.D.N.Y. 2010) (citing Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)).[2]  "Isolated or sporadic" acts generally are

---

[2]   "Courts, including the Second Circuit, have consistently relied on Title VII cases in their analysis of housing discrimination under the FHA."  United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 135 n. 17 (S.D.N.Y. 2015) (quoting Lax v. 29 Woodmere Blvd. Owners, Inc., 812 F. Supp. 2d 228, 234, n.4 (E.D.N.Y. 2011)); see also DiCenso v. Cisneros, 96 F.3d 1004, 1008 (7th Cir. 1996) ("Like the Tenth Circuit, we recognize a hostile housing environment cause of action, and begin our analysis with the more familiar Title VII standard."); Monus v. Riecke, No. CV-21-218, 2021 WL 1721010, at *3 (E.D. La. Apr. 30, 2021) ("Courts apply the Title VII sexual harassment standards to [sex-based hostile housing environment] claims under the FHA."  (citing Greater New Orleans Fair Hous. Action Ctr. v. Kelly, 364 F. Supp. 3d 635, 651 (E.D. La. 2019))).

not pervasive or severe enough to constitute a hostile environment under the FHA. See Rich v. Lubin, No. 02-CV-6786-TPG, 2004 WL 1124662, at *4 (S.D.N.Y. May 20, 2004); see also Beliveau v. Caras, 873 F. Supp. 1393, 1398 (C.D. Cal. 1995) (finding, by analogizing to Title VII hostile work environment claims, that plaintiff alleged sufficiently pervasive harassment which included a single incident of sexual assault bolstered by several incidents of "off-color, flirtatious, and unwelcome remarks" (citing Honce v. Vigil, 1 F.3d 1085 (10th Cir. 1993)).

From her allegations, it is clear that Plaintiff endured a distressing event. The Public Safety Officer's false accusation, the heated verbal confrontation with the Plaintiff, and the summoning of the police, were understandably upsetting events that could be interpreted as both physically threatening and humiliating, particularly in light of the Plaintiff's fear of police violence. That event alone, however, cannot be considered "extraordinarily severe" enough to constitute an "intolerable alteration" of the conditions of Plaintiff's housing environment. Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 672 (S.D.N.Y. 2012); see also Pena-Barrerro v. City of New York, 726 F. App'x 31, 36 (2d Cir. 2018) (finding the alleged work place harassment was "nothing more" than "petty slights" where Plaintiff alleged Defendants threatened to call security on him and accused him of stealing an office chair); cf. Monus, 2021 WL 1721010, at *3 (finding a single incident of sexual assault extraordinarily severe enough to sustain a hostile housing environment claim). Still, a single instance of harassment like the one Plaintiff describes could be part of a larger pattern of discriminatory harassment that, when taken together, is "severe or pervasive" enough to constitute a hostile environment. See Howley v. Town of Stratford, 217 F.3d 141, 154-55 (2d Cir. 2000).

Plaintiff also alleges that she has suffered race-based insults or mistreatment as a resident in her building. (AC at 7.) She describes one incident during which she forgot her keys

and an unnamed Public Safety Officer, an agent of the Defendant, asked if she was a "housemaid." (Id.) Plaintiff does not, however, allege any facts to show that this comment was motivated by racial animus, nor that the incident caused her anything other than a "trivial inconvenience." See Pena-Barrerro, 726 F. App'x at 36 (2d Cir. 2018).

Plaintiff's allegations that other building residents have also mistreated her are insufficient to impute liability to the Defendant as the landlord of the building. A landlord may only be held liable for a hostile environment created by other residents under limited circumstances, none of which have been adequately alleged here. See Francis v. Kings Park Manor, Inc., 992 F.3d 67, 75 (2d Cir. 2021) ("Francis II"). Furthermore, even if Plaintiff could plead additional facts showing that her discriminatory treatment by other residents was sufficiently severe or pervasive to alter her housing conditions, Plaintiff has failed in her current Amended Complaint to allege any facts demonstrating that the Defendant "exercised substantial control over the context in which the [fellow-resident] harassment occur[ed] and over the harasser." Id. Therefore, Plaintiff has failed to plead facts sufficient to show that she has suffered a "series of incidents" of harassment that were "sufficiently continuous and concerted" to create a hostile housing environment. Alfano, 294 F.3d at 374.

*Discriminatory Intent*

Even if Plaintiff's harassment was sufficiently severe to constitute a cognizable hostile housing environment claim, her claim still fails because she does not allege any facts to establish her treatment was motivated by racial animus. "When, as here, a plaintiff brings a claim under the FHA that does not rest on direct evidence of landlord discrimination, we analyze the claim under the familiar McDonnell Douglas burden-shifting framework first developed in Title VII cases." A.L.M. ex rel. Moore, 2021 WL 5121137, at *2 (quoting Francis II, 992 F.3d at

73).  "Plaintiffs have specific, reduced pleading burdens in cases subject to the McDonnell Douglas analysis."  Id. (quoting Francis II, 992 F.3d at 73).  Still, Plaintiff must establish that she has "at least minimal support" for the proposition that Defendant was motivated by discriminatory intent.  Francis II, 992 F.3d at 73.

Plaintiff has plead facts to show that her treatment was caused by her race; her factual allegations, read in the light most favorable to her, plausibly establish that the Defendant's Public Safety Officer erroneously accused the Plaintiff of stealing the jewelry because the security tape showed a Black woman take the cabinet.  (AC at 5.)  However, as Judge Abrams found in her first order of dismissal, "when race plays a purely descriptive role, and there are no facts tending to suggest that racial *animus* was at play, Plaintiff cannot make out a claim for race discrimination on that basis alone."  (Docket entry no. 34 ("First Order of Dismissal") at 10 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989)) (emphasis in original).)  In her Amended Complaint, Plaintiff has not plead any additional facts to suggest that the Public Safety Officer was motivated by racial animus during the confrontation.  Plaintiff has likewise failed to plead any facts showing that any of the other alleged incidents of mistreatment — such as when a Public Safety Officer asked if she was a "housemaid" (AC at 7) — were motivated by racial animus.

Finally, Plaintiff makes several conclusory assertions that the alleged harassment she suffered "was motivated by discriminatory intent to continue the historical racist practices to exclude African American citizens from renting apartments."  (AC at 2; see also id. at 8, 9.)  In support of these statements, Plaintiff cites historic and widespread discrimination against African Americans in the Stuyvesant Town/Peter Cooper Village housing complex from its inception in the 1940s (AC at 2) and the fact that she is the only African American resident of her building in

that complex (AC at 7).  These allegations are insufficient to satisfy the Plaintiff's burden of providing minimal support for the proposition that the conduct of which she now complains was motivated by discriminatory intent.

For these reasons, the Court grants Defendant's motion to dismiss Plaintiff's claims under the FHA for failure to state a claim upon which relief can be granted.

### Remaining State Claims

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C.A. § 1367(c)(3) (Westlaw through P.L. 118-40).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law housing discrimination claims that Plaintiff may be asserting under either the NYSHRL or the NYCHRL.³  See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997))).

### LEAVE TO AMEND

Plaintiff proceeds in this action without the benefit of an attorney.  "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every

---

³ Although Plaintiff does not explicitly assert any state or local housing discrimination claims, the Court is bound to construe liberally any possible claims Plaintiff's amended complaint suggests.  Triestman, 470 F.3d at 474.

reasonable opportunity to demonstrate that [s]he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation and citation omitted).  However, leave to amend is not required where further amendment would be futile.  See Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011).  Leave to amend may be denied if the plaintiff "has already been given an opportunity to amend but has failed to cure the [complaint's] deficiencies." Mays v. McIntosh, No. 21-CV-6481-LTS, 2021 WL 6260373, *1 (S.D.N.Y. Dec. 29, 2021) (citing Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)).

Judge Abrams previously granted Plaintiff leave to amend once.  (First Order of Dismissal at 13.)  However, because Plaintiff proceeds pro se, the interests of justice weigh in favor of granting her every reasonable opportunity to demonstrate the validity of her claim, particularly after being made aware of the deficiencies of her pleading.  See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015).  Therefore, the Court grants Plaintiff one additional opportunity to amend her complaint to rectify the deficiencies identified herein within forty-five days of the entry of this Memorandum Order.  If Plaintiff chooses to file a Second Amended Complaint, that Complaint will completely replace, not supplement, the current Amended Complaint.  Therefore, any facts or claims that Plaintiff wants to include from her First Amended Complaint must be repeated in her Second Amended Complaint.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in its entirety. Plaintiff is granted one final opportunity to replead her housing discrimination claims only. Plaintiff's Second Amended Complaint must be filed **within 45 (forty-five) days of the entry of this Memorandum Order.** Should Plaintiff fail to file an amended complaint within 45 days of this order, this action will be dismissed with prejudice for failure to state a claim without further advance notice. This Memorandum Order resolves docket entry no. 47. The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiff at the below address.

SO ORDERED.

Dated: New York, New York
March 28, 2024

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

Mail To:   Gloria D. Dickerson
7 Peter Cooper Rd., Apt 8G
New York, NY 10010